**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JAMES CAMPBELL,** : | |
| : | |
| **Plaintiff,** : | |
| : | Case No.   26-cv-3527 |
| v.  : | |
| : | |
| **CBRE GROUP, INC.,** : | |
| : | JURY TRIAL DEMANDED |
| **Defendant.** : | |
| : | |

## COMPLAINT

Plaintiff, James Campbell, by and through his undersigned counsel, brings this Complaint against his former employer, CBRE Group, Inc., for violation of his rights under the Americans with Disabilities Act ("ADA"), the Age Discrimination in Employment Act of 1967 ("ADEA"), and the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 ("Section 1981").

**Parties**

1.     Plaintiff, James Campbell, is an adult man whose race is white and who resides in Gilbertsville, Pennsylvania with a date of birth of December 24, 1955.

2.     Defendant, CBRE Group, Inc. ("CBRE"), is a Delaware corporation with its principal executive offices at 2121 North Pearl Street, Suite 300, Dallas, TX 75201, and with numerous locations across the country including, but not limited to, 709 Swedeland Road, King of Prussia, PA 19406.

3.     CBRE is engaged in interstate commerce or in any industry or activity affecting interstate commerce and employed 20 or more employees for each working day during each of 20 or more calendar workweeks in each year from at least 2020 through the present, including in Pennsylvania.

**Jurisdiction**

4.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 in that this lawsuit arises under the laws of the United States, specifically the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA"), the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, and the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 ("Section 1981").

**Factual Background**

5.      CBRE professes to be "the world's largest commercial real estate services and investments firm" and the "global market leader in most of [its] lines of business."

6.      Campbell worked for a company called JCI as a site manager on contract with a client, GSK for a site in King of Prussia, from 2010 until 2015, when CBRE bought the contract and Campbell continued to work for GSK's King of Prussia site as an employee of CBRE as a maintenance/technical planner.

7.      In about 2018/2019, Campbell was diagnosed prostate cancer.

8.      He was treated with surgery but then a year later, the cancer recurred.

9.      Upon its recurrence, the cancer was treated with radiation.

10.      The radiation treatment caused severe bleeding during urination which in turn caused blood clots.

11.      It also caused bowel and bladder incontinence.

12.      Because of his disability, Campbell had been working for CBRE remotely from home since approximately 2020.

13.      Annually, except during COVID stay at home orders, Campbell provided CBRE with a physician's evaluation and certification that his disability required the reasonable

accommodation of working from home and CBRE granted these requests for accommodation from approximately 2020 until February 2025.

14.    Throughout the entire time that Campbell worked for CBRE from home, he was highly effective and his satisfactory job performance never faltered.

15.    On February 13, 2025, Campbell spoke with Amber Yates, a Human Resources employee of CBRE, who informed him that he was fired from CBRE because CBRE would no longer accommodate his disability by permitting him to work remotely.

16.    To effectuate Campbell's firing, CBRE changed the job description for Campbell's position requiring him to be on-site and not permitting him to work remotely any longer.

17.    As of the time of his employment termination in February 2025, Campbell had successfully and satisfactorily performed all essential functions of his job with the accommodation of working remotely for approximately four (4) years since 2020.

18.    Had he been permitted to remain in CBRE's employ after February 13, 2025, Campbell could have and would have performed all essential functions of his job with the reasonable accommodation of working remotely from home.

19.    On or about February 10, 2025, Campbell provided another certification from his physician to CBRE stating clearly and succinctly that:

> "This letter is to support a medical accommodation in the form of work from home status for Mr. Campbell.
>
> Mr. Campbell suffers from bowel and bladder incontinence which developed after his cancer treatment. An office environment does not afford him the opportunity to attend to any hygiene issues that may arise."

20.    Three (3) days later, CBRE fired Campbell at age 69.

21.    Campbell was replaced in his position by an individual who did not have a physical or mental condition that substantially limited one or more major life activities and whose age was in the 20's or 30's.

22.    From approximately 2020 and continuing through the present, Campbell was able to perform all essential functions of the job from which he was fired by CBRE with the accommodation of being permitted to work remotely.

23.    Accommodating Campbell's disability by permitting him to work remotely from home was reasonable.

24.    CBRE's Chief Executive Officer, Robert E. Sulentic, has asserted that, "the biggest and most important thing that we had to do is we had to look out for the health and wellbeing of our people;" "everything else took a backseat to the health and wellbeing of our people;" "first and foremost, it was the health and wellbeing of our people."

25.    Indeed, Mr. Sulentic has stated that, during the COVID pandemic, CBRE had "masses of people [working from] home and got them up and running within 24 hours with telephony, all the computer support they needed. It was a proud moment for CBRE and at a scary time, proud in terms of the way we dealt with the frontline workers and proud in terms of the way we dealt with our office workers."

26.    Mr. Sulentic and CBRE clearly recognize that employees can work very effectively remotely, as Mr. Campbell had done for approximately 4 years before the rug was pulled out from under him and he was fired for no legitimate reason.

27.    A black woman employed by CBRE performed job responsibilities substantially similar to those performed by Campbell, when they were both employed by CBRE to perform

4

services for the King of Prussia site, and was permitted to work remotely from home even though she did not have a disability.

## COUNT I

## DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA

28. The foregoing averments are incorporated by reference as if fully set forth herein.

29. CBRE willfully discriminated against Campbell because of his disability in failing and refusing to afford Campbell the reasonable accommodation of working remotely due to his disability of bladder and bowel incontinence and terminating his employment.

30. CBRE's conduct constitutes a violation of the ADA.

31. Campbell has suffered physical illness as a result of the CBRE's discriminatory conduct toward him.

WHEREFORE, Mr. Campbell prays for relief under the ADA as follows against CBRE:

A. Reinstatement;

B. Front pay in lieu of reinstatement;

C. Backpay;

D. Compensatory damages;

E. Punitive damages;

F. Imposition of appropriate civil penalties;

G. An award of prejudgment and post judgment interest;

H. An award of costs and attorneys' fees; and

I. All such other relief as may be deemed just and proper.

## COUNT II

## AGE DISCRIMINATION IN VIOLATION OF THE ADEA

32.    The foregoing averments are incorporated by reference as if fully set forth herein.

33.    CBRE willfully discriminated against Campbell because of his age in terminating his employment at age 69 years old with no legitimate business reason.

34.    CBRE's conduct constitutes a willful violation of the ADEA.

35.    Campbell has suffered physical illness as a result of CBRE's discriminatory conduct.

WHEREFORE, Mr. Campbell prays for relief under the ADEA as follows against CBRE:

A.    Reinstatement;

B.    Front pay in lieu of reinstatement;

C.    Backpay;

D.    Liquidated damages;

E.    Compensatory damages;

F.    Imposition of appropriate civil penalties;

G.    An award of prejudgment and post judgment interest;

H.    An award of costs and attorneys' fees; and

I.    All such other relief as may be just and proper.

## COUNT III

## RACE DISCRIMINATION IN VIOLATION OF SECTION 1981

36.    The foregoing averments are incorporated by reference as if fully set forth herein.

37. In permitting a similarly situated employee whose race is black to remain employed by CBRE by working remotely, but refusing to permit Campell whose race is white to remain employed by CBRE by working remotely, CBRE violated Section 1981.

38. Campbell has suffered physical illness as a result of CBRE's discriminatory conduct.

WHEREFORE, Mr. Campbell prays for relief under Section 1981 as follows against CBRE:

A. Reinstatement;

B. Front pay in lieu of reinstatement;

C. Backpay;

D. Punitive damages;

E. Compensatory damages;

F. Imposition of appropriate civil penalties;

G. An award of prejudgment and post judgment interest;

H. An award of costs and attorneys' fees; and

I. All such other relief as may be just and proper.

Respectfully submitted,

/s/ Edward S. Mazurek
Edward S. Mazurek (PA I.D. No. 50278)
25201 Cornerstone Drive
Yardley, PA 19067

267.243.3393
emazurek@mazureklawfirm.com

Attorney for Plaintiff, James Campbell